## THE ALGITHA.

*(District Court, D. Maryland. June 19, 1883.)*

SALVAGE SERVICE—TOWAGE—COMPENSATION.

> A steamer, disabled by the breaking of her propeller shaft, made signals of distress, which were observed by another steamer, which took her in tow, and, after towing her 12 hours, voluntarily cast off the hawser, without communication with her and under no stress of weather, and left her in no better position in any respect than when she found her.
>
> *Held,* not to be a salvage service, and not to be a towage service, for which any compensation should be made

In Admiralty.

*Brown & Brune,* for libelant.

*John H. Thomas,* for responden.

MORRIS, J. The Algitha, a British steamer of about 2,000 tons, having on board a valuable cargo of grain, was on a voyage from New Orleans via Sydney, Cape Breton, to Antwerp, Belgium, when she became disabled in her motive power by the breaking of her propeller shaft on September 3, 1882, in latitude 30 deg. 42 min. N., longitude 78 deg. 20 min. W. Her sails were sufficient to navigate her, and she had drifted with the gulf stream two to three miles an hour, until she was in latitude 32 deg. 15 min. N., longitude 77 deg. 45 min. W., on the eastern edge of the gulf stream, about 150 miles from Charleston, and about 340 miles from Cape Henry, when on the night of September 6th, about an hour after midnight, her signals of distress were observed from the American steamer Gaudaloupe, then on a voyage from Galveston, Texas, to New York. Capt. Nickerson, the master of the Gaudaloupe, went off his course some six or seven miles to the Algitha, and Capt. Barwise, her master, coming on board the Gaudaloupe, they had an interview. Capt. Barwise was anxious to have the Algitha towed to a place of safety inside the capes of the Chesapeake, so that he could get a tug to take him to

Norfolk or Baltimore for repairs. The Gaudaloupe was a steamer worth $400,000, and had on board 5,500 bales of cotton, worth $350,000, which she was carrying to New York to be transhipped to a Liverpool steamer which was to sail from New York on Wednesday, September 13th. She was rather short of coal, having only four days' supply, and being then about two days' sail from New York, so that if she undertook to tow the Algitha and rough weather should come on, her coal might entirely give out. For these reasons Capt. Nickerson hesitated undertaking to tow the Algitha to the Chesapeake, but as that was the same course he was sailing he reluctantly yielded to Capt. Barwise's request, who, as he says, told him if he would take hold and tow the Algitha, even if he had to let her go, he would be paid for as far as he did tow her, and that if the Gaudaloupe ran short of coal she could have a sufficient supply from the Algitha when she came to anchor; the only difficulty about that being that it might take 10 or 12 hours to put 50 tons of coal from one ship to the other.

Capt. Barwise's testimony is that Capt. Nickerson finally agreed that he would tow the Algitha to a safe anchorage in the Chesapeake. It is, however admitted, that there was discussion about the short supply of coal, and about the necessity of the Gaudaloupe reaching New York in time to deliver her cotton for reshipment, and that Capt. Nickerson was reluctant to attempt to tow the Algitha to the Chesapeake, and I think it most probable that what Capt. Nickerson finally consented to is just what he states, viz., that he was to tow the Algitha until he had to let her go, and that the compensation should be arranged by their respective owners. Thereupon the Gaudaloupe lay by the Algitha until the morning, when her hawser was put about the Gaudaloupe. She began towing the Algitha at 6 o'clock in the morning and continued until 6 in the evening, accomplishing about 77 miles, or at the rate of 6 miles an hour; her ordinary rate previously having been from 10 to 11 miles an hour. The wind then having risen a little, and the sea having become somewhat rougher, Capt. Nickerson directed the hawser to be cast off. This was done after a hail to the Algitha, the purport of which was not understood by those on board of her. The Algitha was left about 340 miles from Cape Henry, on the inner edge of the gulf stream, and about 40 miles nearer the land than when taken in tow. She drifted with the gulf stream for 37 hours, when she fell in with the steamer Seminole, plying between Boston and Charleston, and was towed by her into the Chesapeake.

The libel is filed for salvage, and claims $2,500.

It is apparent that there is in the case no element of a salvage service. The disabled vessel was not taken to a place of greater safety, but rather the contrary, nor was she left where her chance of meeting another steamer was better, but rather worse, and the distance accomplished, although in the desired direction, was insignificant.

The allegation in the libel is that during the 12 hours the towing lasted the sea was continuously rising and the wind getting stronger, and the severity of the weather such that great care was required, and at 6:30 the wind had increased to a gale, and the seas running exceedingly high, so that the hawser had to be cast off. But the proof of the claimants convinces me that when the hawser was cast off, although there was some little more wind and sea than in the morning, the increase was slight, and that the speed of the towing had not noticeably diminished. The log-book of the Gaudaloupe does not support the statements of the libel; the entries being, "at 6:30 p. m., *weather cloudy; strong north-east wind.*" At 1 a. m., during the night following, "*cloudy weather, moderate north-east wind, and small sea.*" The barometer had remained high, without marked change.

The proof leads me to the conclusion that Capt. Nickerson ordered the hawser to be cast off, not on account of any change in the weather, as the libel alleges, but because he began to repent of the undertaking, and to return to his original idea that his duty to the owners of his steamer, and to the owners of the cotton, required him to make all speed to New York, and not to run the risk of being obliged either to delay 10 or 12 hours in the Chesapeake for coal, or to go to sea from there with a very scant supply. I do not think it was the weather which changed, but his mind.

Taking Capt. Nickerson's own version of the agreement,—that if he would take hold and tow, and had to let go, he would be paid for what towing he did,—I do not think the libelant's case is made out. It must have been intended that he was to continue to tow until, from some change of circumstances, he was compelled to let go, not merely so long as he might continue to think it for the interest of his owners. Otherwise it would have been folly for Capt. Barwise to agree to pay the high rate usually allowed for such towage merely to be left in a position no better than he was at first, and it would have been misleading on the part of Capt. Nickerson to have undertaken such a service.

The conduct of Capt. Nickerson, upon observing the signals of distress, in going out of his course, and in lying by the Algitha during the night, evinced a highly commendable spirit, and it is with hesitation that I deny all compensation for their delay, and for the 12 hours' towing; but as the Algitha, without any stress of weather, was left by him as helpless, and in at least as unfavorable a position, as where he found her, if not in a worse one; and as he abandoned her without any communication or consultation with her master; and as I find that the contract, regarded simply as a towage contract, was not performed,—I do not think it is a case in which there should be any recovery. Services to vessels in distress should be encouraged, but not such as voluntarily leave the disabled vessel in the same plight. I think the duty of the court is well indicated by Judge BENEDICT in

*The Edam*, 13 FED. REP. 140. Speaking of the frequency with which it now happens that steamers are left, by accidents to their machinery at sea, wholly dependent on other steamers for relief, he says:

"It appears a duty owing by the courts of admiralty to the public to give a reward sufficiently liberal to induce the master of any steamer to overcome all unwillingness to assume additional labor, to put aside his desire to make a direct and quick passage, even to disregard the express instructions of his owners, in favor of the request of another steamer disabled at sea to be towed to a place of safety."

Libel dismissed, *without costs* to either party.