## THE I. W. NICHOLAS.

(District Court, W. D. New York. October 3, 1906.)

1. SALVAGE—NATURE OF SERVICE—AIDING STRANDED VESSEL.

In the early part of November the steel steamer I. W. Nicholas stranded in a fog on a rocky reef in the northern part of Lake Michigan, and the steamer Amazonas came to her relief in response to signals of distress. Backing near at some risk, owing to rocks on the bottom, a hawser was run from one vessel to the other, and by their united efforts the Nicholas was moved a considerable distance, when she again grounded astern. After further efforts, lasting in all four hours, the work was discontinued at the instance of the master of the Nicholas, who sent his mate by the Amazonas for a wrecking tug. Some time later a storm came on and the Nicholas was released by the effect of the waves without injury. She was in a better position for such release by reason of the efforts of the Amazonas, and was originally in considerable peril; the weather being threatening. *Held,* that the service performed by the Amazonas was one of salvage, and not merely of towage, although not one of a high order of merit, and that she was entitled to reimbursement for injury and damage to her equipment, and to an additional award of $800; her value with her cargo being $149,000 and that of the Nicholas $127,400.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage § 17.

Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

2. SAME—RIGHT TO COMPENSATION—SUCCESS OF EFFORTS.

It is not essential to the right to salvage that the services rendered should have been entirely successful, although the fact that they were not may be considered on the question of the amount of compensation.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage § 30.]

In Admiralty. Suit for salvage.

Clinton & Clinton and George Clinton, for libelant.

Goulder, Holding & Masten and Harvey D. Goulder, for respondent.

HAZEL, District Judge. Early in the morning of November 4, 1903, the steel vessel I. W. Nicholas, owing to foggy weather, stranded on the south side of Simmons' Reef, in the northern part of Lake Michigan, about a quarter of a mile from the gas buoy and not far distant from the usual pathway. She went aground forward and to about midships. The libelant, owner of the steamship Amazonas, claims salvage for services rendered by that vessel to the Nicholas. The salvor was bound from Chicago to Buffalo with a cargo of corn and oats, and when near Simmons' Reef heard signals of distress. She immediately left her course and approached within one-half mile of the stranded vessel. After vainly attempting to free the Nicholas from the dangerous position, her skipper had determined to engage a wrecking tug to lighter her and then pull her off. With that object in view he hailed the passing vessel and directed his mate to proceed on board her to Mackinaw, about 40 miles distant, and there telegraph to Cheboygan for a wrecking tug and appliances. The master of the Amazonas suggested to the mate when he came aboard that, if desired, he would pull off the stranded steamer, and later, the master of the Nicholas consenting, the Amazonas dropped her anchor to keep her in position, turned around, and cautiously went toward the reef, stern first. The soundings between the two steamers indicated from 20 to 24 feet of water, but nevertheless danger existed to the salving steamer from submerged boulders and rocks, which made it necessary to proceed with caution. About 800 feet of the steel hawser of the Nicholas was made fast through the stern chock of the Amazonas. The latter vessel worked ahead, while the former reversed strong on her engines, and by their joint efforts the Nicholas reversed quite a considerable distance, when suddenly she also grounded astern. The cable was thereupon shifted to her starboard bow, and the attempts to release her continued. The testimony as to whether the Nicholas after shifting the cable moved owing to the exertions of the Amazonas is contradictory. However, after laboring and pulling during about four hours, her skipper, fearing an injury to her bottom on account of boulders and dragging, let go the hawser, signaled the Amazonas to cease pulling, and again directed the mate to board the Amazonas and proceed to Mackinaw for a wreckage outfit. In the afternoon a squall broke, which had threatened during the forenoon while the work to release the steamer was in progress. The gale blew from the west, and steadily increased in velocity. The combers struck the steamer on her port side, fortunately releasing her from her imperiled position without injury. She raised in the sea and floated without assistance other than from her own engine and machinery. The evidence is very conflicting regarding the distances that the Nicholas reversed while the Amazonas was working her engine ahead, and also regarding her exact position on the reef. Some of the witnesses estimated the distance that she

reversed at about 800 to 1,000 feet. Capt. Nelson, however, testified that she was pulled astern only 100 to 150 feet, and that her bow was then headed in a northeasterly direction. He also testified that she was aground approximately on the edge of the reef. Libelant contends that the Nicholas backed further on the reef in her efforts to extricate herself; that a blowing southwest wind and the current shifted her still further upon the rocky reef.

Respondent admits that towage services were performed, and expressed a willingness in the answer to pay a reasonable compensation therefor, but denies that the attempts to release the vessel were attendant by dangers or risks to the Amazonas or her crew. And it is insisted that the services rendered were unsuccessful and wholly without benefit to the distressed steamer. The latter proposition is undoubtedly entitled to consideration on the question of the amount of compensation for the services rendered, but the rule of law does not imply that a vessel hastening to succor another should completely succeed in the undertaking before being entitled to salvage compensation. Upon the elicited facts I am of opinion that a salvage service was performed, although the danger to the Amazonas evidently was not great. Her exertions to relieve the vessel during the progress of the work may have been futile. Yet who can say that they would not have been crowned with complete success had she been permitted to perform the service which Capt. Nelson in the exercise of perhaps a proper precaution elected to discontinue. That the stranded steamer was in a position of danger is unquestioned. Indeed, she was exposed to a threatened storm, and her position was one to justify at least apprehension, even though danger was not actual or imminent.

Libelant contends that the services rendered without doubt resulted in the vessel securing an advantageous position on the reef; that the squall might have put her in a worse position; in fact, might have resulted in stoving a hole in her bottom. The evidence is sufficiently persuasive that by the efforts of the Amazonas the bow of the Nicholas came round to starboard and swung clear of the gas buoy on the edge of the reef, putting her in a more favorable position. She was enabled thereby to get the force of the wind and of the increasing waves. That her position would have the effect of contributing largely to her subsequent release by the wind and waves probably was not anticipated; but any such suggestion is not material. Nor is it important to determine whether the vessel was on the edge of the reef or a quarter of a mile distant therefrom. It is well established that the degree of danger is not an important factor in applying the principle underlying the salvage compensation. The Plymouth Rock (D. C.) 9 Fed. 413. As all the elements upon which to base a salvage service are here present, even though the risks of the salvor or the danger to the disabled vessel were not great, I am convinced that the service ought not to be deemed a mere towage service. The rule announced in The Edam (D. C.) 13 Fed. 140, and followed in The Algitha (D. C.) 17 Fed. 551, would seem to apply. It is there stated:

"It appears a duty owing by the courts of admiralty to the public to give a reward sufficiently liberal to induce the master of any steamer to overcome all unwillingness to assume additional labor, to put aside his desire to make

a direct and quick passage, even to disregard the express instructions of his owners, in favor of the request of another steamer disabled at sea to be towed to a place of safety."

It is more difficult to fix the proper amount of salvage compensation to be paid than to determine the character of the liability. In fixing such amount, however, I have chiefly taken into consideration the willingness of the Amazonas to be of assistance, together with what was actually accomplished and the rule above quoted, that salvage compensation should generally be awarded to encourage the vigilant performance of services of this character. The values of the vessels and cargoes, together with their draft, are as follows: The Nicholas has a burden of 2,500 tons, draws 18 feet 5 inches of water forward and 17 feet aft. Her conceded value was $120,000, and her cargo $7,400. The draft of the Amazonas was about 18½ feet and she was valued at $85,000, and her cargo at $64,000. There is nothing in the circumstances of the service rendered to justify a large or liberal compensation, or, indeed, the compensation of $5,000 demanded in the libel. Some risk perhaps was taken by the Amazonas in backing on the reef and toward the distressed steamer, but to properly lessen this risk it should not be forgotten that soundings were properly and skillfully taken, and that there was sufficient depth of water in the immediate locality to insure a reasonably safe undertaking. Neither the sea nor the wind were troublesome. An allowance based on high merit would not be warranted, although, as already stated, the action of the master of the Amazonas is deserving of commendation and reward despite his failure to successfully release the distressed steamer. In view of the circumstances, I think $1,220 will be a fair and proper compensation. Out of this sum the claimant, the Davidson Steamship Company, should first be reimbursed for the reasonable expense incurred for a new hawser and small ropes, amounting to $420. These are shown by the evidence to have been injured in the services rendered. The balance of the award will be apportioned as follows: Five hundred dollars to the libelant, Davidson Steamship Company; $100 to the master; $200 to the crew, to be apportioned according to their wages.

Let a decree in favor of the libelant, with costs, be entered accordingly.